Chase J. Potter
Texas Bar No. 24088245
Joshua L. Shepherd
Texas Bar No. 24058104
potter@imcplaw.com
shepherd@imcplaw.com
Iacuone McAllister Potter PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
214.432.1536

Counsel for the Agent and
Proposed Special Counsel for Trustee

Davor Rukavina
Texas Bar No. 24030781
Thomas D. Berghman
Texas Bar No. 24082683
Brenda L. Funk
Texas Bar No. 24012664
Conor P. White
Texas Bar No. 24125722
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone: (214) 855-7500
drukavina@munsch.com
tberghman@munsch.com
bfunk@munsch.com
cwhite@munsch.com

Counsel for
Scott M. Seidel, Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>WITH PURPOSE, INC.,<br><br>    DEBTOR. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 23-30246-mvl-7<br><br>Chapter 7 |
| SCOTT M. SEIDEL, TRUSTEE,<br><br>    Plaintiff,<br><br>v.<br><br>BANZAI ADVISORY GROUP, LLC<br>and TOBY NEUGEBAUER,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary No. _____ |

**COMPLAINT**            **Page 1 of 14**

## COMPLAINT

Pursuant to the court-approved 9019 Agreement and Joint Prosecution Agreement, GloriFi Acquisitions, LLC (the "Agent") as the exclusive agent of, and in the name of, Scott M. Seidel (the "Trustee" or "Plaintiff"), the duly-appointed Chapter 7 Trustee for the estate (the "Estate") of With Purpose, Inc. (the "Debtor"), the debtor in the above-styled and numbered Chapter 7 bankruptcy case (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court" or the "Court"), and files this *Complaint* (this "Complaint") against Banzai Advisory Group, LLC ("Banzai") and Toby Neugebauer ("Neugebauer", and collectively with Banzai, the "Defendants"), and would respectfully show the Court as follows:

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter and the relief requested herein under 28 U.S.C. §§ 157(b) and 1334. This matter presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter final orders for the relief requested herein.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 because the Bankruptcy Case is pending in this district and the causes of action asserted herein arise in, and are related to, that case.

3. The statutory and legal predicates for the relief sought herein are Sections 502, 544, 547, 548, and 550 of the Bankruptcy Code[1], Tex. Bus. & Comm. Code §§ 24.001, *et seq.* ("TUFTA"), and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## II. PARTIES

4. The Trustee is the duly appointed Chapter 7 Trustee of the Debtor and the Estate, and files this Complaint in such capacity.

5. Banzai is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Banzai may be served with process in this Adversary Proceeding (i) by and through its registered agent, Capitol Corporate Services, Inc., as follows: Banzai Advisory Group, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. Mopac Expressway, Ste 220, Austin, TX 78746; and (ii) by and through its Managing Member, Neugebauer, at 10777 Strait Lane, Dallas, TX 75229.

6. Neugebauer is an individual who may be served via first class mail, postage prepaid, to his place of residence at: 10777 Strait Lane, Dallas, TX 75229, pursuant to Rule 7004(b)(1) of the Bankruptcy Rules.

## III. FACTUAL BACKGROUND

7. Part of the Debtor's core business as a start-up was the development of the "tech stack" to support its vision of a conservative financial platform. As has been more fully detailed in the multitude of filings in the Bankruptcy Case, the Debtor's history was marred by failed attempts to complete the financial platform and monetize the business due, in large part, to Neugebauer's breaches of fiduciary duty, self-dealing, and mismanagement. Almost immediately after inception, the Debtor faced one liquidity crisis after another.

8. After March of 2022, due to Neugebauer's relentless self-dealing and unyielding desire to singularly control the Debtor (which included Neugebauer's removal of directors who stood between Neugebauer and unfettered self-dealing), the Debtor was floundering. The Debtor's impressive investor base – who would have funded the bridge financing needed to close the de-

SPAC transaction and take the Debtor public at a valuation of almost $1.7 billion but for Neugebauer's bad acts – lost confidence in the Debtor due to Neugebauer's self-dealing and malfeasance. By April 2022, *at the latest*, the Debtor was insolvent. The Trustee avers that the Debtor remained insolvent throughout the remainder of its short life.

9. Neugebauer is the Debtor's founder, was a member of the Debtor's Board of Directors, and served as the Debtor's Chief Executive Officer. As such, Neugebauer owed various fiduciary duties, including the duty of loyalty, to the Debtor. Neugebauer was also the Debtor's majority shareholder.[2] Suffice it to say, that at all relevant times, Neugebauer was "the man behind the curtain" (to use the Court's phrase)[3] with respect to the Debtor, its brief and tenuous operations, and those of its subsidiaries. Indeed, Neugebauer himself instigated this Bankruptcy Case on behalf of the Debtor, signing the Debtor's bankruptcy petition as its manager. This voluntary bankruptcy petition, seeking relief under Chapter 7 of the Bankruptcy Code, was filed on February 8, 2023 (the "Petition Date").

10. On January 13, 2022, Neugebauer formed GloriFi Receivables Acquisition Company, LLC ("GRAC"). Within GRAC's *Limited Liability Company Agreement*, the Debtor is designated as the "Sole Member" as well as the "Managing Member" for the company. In that role, the Debtor "…shall have the sole and exclusive right to manage, control, and conduct the affairs of [GRAC] and to do any and all acts on behalf of [GRAC] permitted by applicable law…."

---

[2] *See e.g.* The Court's *Memorandum Opinion Denying Conversion to Chapter 11 and Granting the Trustee's Compromise with Jackson Investment Group Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Banky. Dkt. No. 396] (the "9019 Opinion") at ¶ 11.

[3] 9019 Opinion, p. 33. While the Court uses the phrase in the context of Neugebauer's control of the Debtor Post-Petition, the Trustee asserts that the circumstances were no different pre-petition.

Thus, the Debtor – who was controlled by Neugebauer – is the 100% owner of GRAC[4] and had 100% control of GRAC. GRAC shared the same employees as the Debtor, operated out of the same office, and shared the same overhead. Indeed, emails sent by employees purporting to work on GRAC matters utilized the Debtor's email domain. The simple fact is, the two entities are not separate, but instead one in the same. Indeed, the Internal Revenue Service ("IRS") recognizes this fact, as GRAC is federally classified as a "disregarded entity." Stated differently, the IRS disregards that GRAC is separate from its owner, the Debtor.

11. Rather than for a legitimate business purpose separate from the Debtor, it appears Neugebauer established GRAC as a sham to perpetrate a fraud upon, and in determinant to, the Debtor's true creditors. As part of the *Debtor's* financial platform, valuable credit card receivables were generated. Neugebauer formed GRAC in order to siphon-off these valuable credit card receivables from the Debtor and into a "separate" entity – one that was ripe for Neugebauer's pillaging through one of his wholly owned, and solely controlled, entities. Indeed, that is what occurred.

12. Defendant Banzai is wholly owned by Neugebauer and his wife Melissa, being the only two members of the limited liability company. Out of the couple, Neugebauer is the individual who serves as the "Managing Member," controlling and conducting the affairs of the company through his decisions alone.

13. Dated August 2, 2022, through the Debtor, Neugebauer caused GRAC to issue a sham Promissory Note in favor of Neugebauer's Banzai in exchange for Banzai "loaning" GRAC

---

[4] As a point of clarification for the current posture of this ownership interest, pursuant to the Court's *Order Granting Trustee's Motion for Approval of Compromise and Settlement with, and Sale to, Jackson Investment Group, LLC* [Dkt. No. 399] (the "9019 Order"), GloriFi Acquisitions, LLC (the "Agent") has purchased "…all stock, shares, or similar expressions of equity ownership in each of the Debtor's subsidiaries … free and clear of all liens, claims, interests, and encumbrances of any kind or type…". *See* 9019 Order, pp. 4-5.

**COMPLAINT** **Page 5 of 14**

the sum of $5 million (the "Sham Note").[5] The Sham Note effectively provides Banzai with a blanket lien on GRAC's assets (the "Lien"), including those very credit card receivables that had been siphoned-off from the Debtor. Boasting a purported interest rate of over 10% per annum, the Sham Note indicates that the "principal and accrued interest of this Note will be due and payable by [GRAC] in case at any time on or after January 28, 2023 … at [GRAC]'s written election or upon written demand by [Banzai]."

14. That same day, August 2, 2022, Banzai transferred $5 million to GRAC.

15. On November 21, 2022, Debtor announced that it (and therefore, correspondingly, GRAC) had decided to "begin winding down the company's operations."[6] As "the man behind the curtain," Neugebauer had knowledge of the Debtor's (and GRAC's) then catastrophic financial condition. With this knowledge, on December 6, 2022, Neugebauer, through Banzai, took it upon himself to withdraw a total of $3,913,181.28 from GRAC's bank account (the "Transfer"). As a result of the Transfer, the GRAC account was effectively swept bare, leaving only the *de minimis* amount of $23,674.00.

16. While made under the guise of a GRAC default under the Sham Note, the Transfer was nothing more than Neugebauer breaching his fiduciary position with the Debtor, and in turn, GRAC, in order to pillage funds for himself, and to the detriment of legitimate, non-insider, creditors. Following the Transfer, on December 23, 2022, Banzai filed *Plaintiff's Original Petition* against the GRAC and the Debtor (the "Banzai Petition"), instigating Cause No. DC-22-17591 in the 134th Judicial District Court of Dallas County, Texas.

---

[5] A copy of the Sham Note is attached as "Exhibit A" to Banzai Proof of Claim in the Bankruptcy Case, which is found as Claim 56-1 in the Debtor's claims register (the "Banzai Claim").

[6] WPICM Ex 491 at WPI_Trustee_9019_01799301.

17. During the one-year period prior to the Petition Date, that is between February 8, 2022 and February 8, 2023 (the "1-Year Period"), Banzai (through Neugebauer) wrongfully helped itself to the Transfer, which was a transfer of an interest of the Debtor's property – *vis a vis* GRAC – to or for the benefit of the Defendants.

18. During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional facts relating to the Defendants and/or the Transfer which give rise to additional claims and/or causes of action arising from the Parties' relationship as alleged herein. The Trustee expressly reserves his right to amend this Complaint to include further information and/or causes of action regarding the Defendants, the Transfer, and/or additional transfers that may become known to the Trustee at any time during this proceeding, through formal discovery or otherwise.

## IV.    CLAIMS FOR RELIEF

**A.    COUNT I: Alter-Ego**

19. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

20. At all times since its formation, GRAC was a mere instrumentality, agent, and/or alter-ego of the Debtor. A wholly owned subsidiary, disregarded as being "separate" in the eyes of the government, was no more than an *a/k/a* or *d/b/a* of the Debtor. While the Debtor exercised complete control over GRAC, in reality, the two entities effectively operated as a single business entity.

21. Thus, as equitable relief to avoid injustice, the Trustee requests that GRAC be disregarded, and that "the ultimate party in interest, the parent, be regarded in law and fact as the

sole party in [the] particular transaction,"[7] which here, is in regard to the Transfer.

**B.    COUNT II: Avoidance of Lien – Preference (11 U.S.C. § 544)**

22.    The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

23.    In the event the Lien was perfected after the Petition Date and more than thirty (30) days after the Sham Note was issued, the Lien was unperfected on the Petition Date.

24.    Accordingly, as it was not perfected on the Petition Date, the Trustee is allowed to avoid the Lien under Section 544 of the Bankruptcy Code.

**C.    COUNT III: Avoidance of Transfer – Preference (11 U.S.C. § 547)**

25.    The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

26.    Both the granting of the Lien and the Transfer were transfers of an interest of the Debtor in property.

27.    Further, the granting of the Lien and the Transfer were: (i) to or for the benefit of Banzai, a creditor and Insider;[8] (ii) for or on account of an antecedent debt owed by Debtor before the Transfer was made; (iii) made while Debtor was insolvent; (iv) made within the 1-Year Period; and (v) enabled Banzai to receive more than it would receive had either the Lien or Transfer not been made and the Defendant received payment in this Chapter 7 Bankruptcy Case to the extent provided by the provisions of the Bankruptcy Code.

---

[7] *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 66 (S.D. Tex. 2007), *on reconsideration in part sub nom. ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008).

[8] As that term is defined within the Bankruptcy Code.

---

28. Accordingly, the Trustee is entitled to avoid the Lien and the Transfer pursuant to Section 547(b) of the Bankruptcy Code.

**D. COUNT IV: Avoidance of Transfer – Fraudulent Transfer (11 U.S.C. § 548)**

29. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

30. In the alternative to pleading that the granting of the Lien and the Transfer were both voidable preferences, the Trustee pleads that they were both fraudulent transfers. Specifically, to the extent the Defendants deny that the granting of the Lien or the Transfer were made for, or on account of, an antecedent debt owed by the Debtor before such transfer was made, then the granting of the Lien and the Transfer are still avoidable as a fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code because: (i) the Debtor did not receive a reasonably equivalent value in exchange for the granting of the Lien or the Transfer; and (ii) the Debtor was insolvent at the time of both events.

**E. COUNT V: Avoidance of Transfer – Fraudulent Transfer (TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*[9])**

31. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

32. In the alternative, prior to and after the date of the Transfer, the Debtor was a creditor of GRAC; and the Debtor's claim remains unsatisfied. The Trustee asserts Count V of this Complaint as such.

33. The Transfer was fraudulent as to the Debtor under Section 24.006(a) of TUFTA because: (i) GRAC was insolvent when it made the Transfer, or the making of such transfer rendered GRAC insolvent; and (ii) GRAC did not receive a reasonably equivalent value in

---

[9] This is the Texas Uniform Fraudulent Transfer, referred to herein as "TUFTA".

exchange for the Transfer.

34. In the alternative, the Transfer was fraudulent as to the Debtor under Section 24.006(b) of TUFTA because: (i) the Transfer was made to an insider for an antecedent debt; (ii) the Debtor was insolvent at the time of the Transfer; and (iii) Banzai, through Neugebauer, had reasonable cause to believe that the Debtor was insolvent.

35. Accordingly, pursuant to Section 24.006 of TUFTA, the Trustee requests the avoidance of the Transfer. Moreover, pursuant to Section 24.013 of TUFTA, the Trustee is entitled to his reasonable costs and attorneys' fees in avoiding and recovering the Transfer.

**F.    COUNT VI: Recovery of Voidable Transfer**

36. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

37. Banzai was the initial transferee of the Transfer, or the immediate or mediate transferee of such initial transferee, or the Transfer was made for Banzai's benefit.

38. Pursuant to Section 550 of the Bankruptcy Code, the Trustee is entitled to recover the Transfer, in the total amount of at least $3,913,181.28, and hereby seeks a money judgment against Banzai in at least that amount.

39. Pursuant to TUFTA, the Trustee seeks the recovery of the Transfer, by money judgment against Banzai, in the amount of at least $3,913,181.28.

**G.    COUNT VII: Disallowance of Claim (11 U.S.C. § 502)**

40. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

41. Banzai is a transferee of Transfer, which is avoidable as stated herein. As such, the Transfer is recoverable pursuant to Section 550 of the Bankruptcy Code.

42. Banzai has not paid back any portion of the Transfer.

43. Accordingly, pursuant to Section 502(d) of the Bankruptcy Code, any Claim[10] Banzai and/or its assignees may have against the Debtor or the Estate – including the Banzai Claim – must be disallowed.

44. Moreover, pursuant to Section 502(j) of the Bankruptcy Code, any Claim Banzai and/or its assignees may have against the Debtor or the Estate which may have been previously allowed in the Bankruptcy Case, must be reconsidered and disallowed.

45. The Trustee hereby requests that the Bankruptcy Court disallow all Claims of Banzai.

### H. COUNT VIII: Conversion

46. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

47. Prior to the Transfer, Debtor – through GRAC – owned or had legal possession of the funds, or entitlement to possession of such funds.

48. With the Transfer, Banzai, through Neugebauer, unlawfully and without authorization assumed and exercised dominion and control over the funds to the exclusion of, or inconsistent with the Debtor's rights as an owner of GRAC.

49. On information and belief, the Debtor, through GRAC, demanded return of the Transfer.

50. Defendants have failed and refused to return the Transfer.

### I. COUNT IX: Neugebauer's Breach of Fiduciary Duty

51. The Trustee hereby incorporates all of the foregoing and ensuing facts and

---

[10] As that term is defined in Section 101(5) of the Bankruptcy Code.

allegations as if set forth herein.

52. Neugebauer owed fiduciary duties to the Debtor, including, but not limited to, the duty of loyalty and the duty of care.

53. In a flagrant violation of these duties, Neugebauer established GRAC in order to siphon valuable receivables away from the Debtor. Then, in a clear act of self-dealing, he caused GRAC to allegedly pledge those receivables to Neugebauer's wholly owned family company (Banzai), in exchange for what was truly a $5 million equity investment. When it became clear that the Debtor's business would not survive – the very Debtor that he controlled – Neugebauer exercised that control to execute the Transfer, making sure that *he* received a significant payday to the detriment of the Debtor's *actual* creditors. To make matters worse, Neugebauer then sued the Debtor seeking additional payments and the imposition of a constructive trust. By taking each one of these actions, and especially when looking at these actions collectively, there is no question that Neugebauer breached his fiduciary duties.

54. As a result, the Debtor was damaged through the loss of property interests with a value of at least $3,913,181.28.

**J.      COUNT X: Pre-Judgment Interest, Attorneys' Fees, and Expenses**

55. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

56. The Trustee is also entitled to recover pre-judgment interest at the federal post-judgment rate from the date of the Transfer until the date of the judgment.

57. The Trustee is also entitled to recover his reasonable costs and attorneys' fees in avoiding and recovering the Transfer pursuant to Section 24.013 of TUFTA.

## V.  PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that Defendants be cited to appear and to answer this Complaint, and that the Trustee have judgment against Defendants as follows:

(i) avoidance of the Transfer as requested herein;

(ii) recovery of the Transfer as requested herein;

(iii) money judgment against Banzai as requested herein;

(iv) money judgment against Neugebauer for breach of fiduciary duty;

(v) reasonable attorneys' fees and costs;

(vi) pre-judgment interest and post-judgment interest at the highest rate allowed by law; and

(vii) all such other and further relief, at law or in equity, to which the Trustee may be entitled.

Respectfully submitted,

*/s/ Chase J. Potter*

**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

**JOSHUA L. SHEPHERD**
Texas Bar No. 24058104
E-Mail: shepherd@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:    (214) 432-1536

**COUNSEL FOR THE AGENT AND
PROPOSED SPECIAL COUNSEL FOR TRUSTEE**

-and-

**DAVOR RUKAVINA**
Texas Bar No. 24030781
**THOMAS D. BERGHMAN**
Texas Bar No. 24082683
**BRENDA L. FUNK**
Texas Bar No. 24012664
**CONOR P. WHITE**
Texas Bar No. 24125722
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone: (214) 855-7500

**COUNSEL FOR TRUSTEE**