# EXHIBIT 3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| ANIMO BANCORP, INC., | § | |
| | § | Case No. 24-50359-alt |
| Debtor. | § | |

## GLORIFI ACQUISITIONS, LLC'S OBJECTION TO DEBTOR'S MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 11 PURSUANT TO SECTION 706(a) OF THE BANKRUPTCY CODE, AND BRIEF IN SUPPORT

GloriFi Acquisitions, LLC (the "Agent") files this Objection (the "Objection") to the *Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code* [Dkt. No. 39] (the "Conversion Ploy" or "Motion") filed by Animo Bancorp, Inc. (the "Debtor" or "Bancorp"), and respectfully shows the Court as follows:

## I.
## SUMMARY

***"The Motion to Convert is a thinly-disguised motion to remove the Trustee. There is no purpose to Chapter 11, only a change of control."***

-Hon. Michelle V. Larson, denying Toby Neugebauer's last motion to convert, *In re With Purpose, Inc., No. 23-30246-mvl7 (Bankr. N.D. Tex. Jan. 22, 2025)*[1]

***"I Googled solutions one night and came up with that this might be a way that we could avoid litigation."***

-Toby Neugebauer[2]

---

1 *See* Memorandum Opinion Denying Conversion to Chapter 11 and Granting the Trustee's Compromise with Jackson Investment Group Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "WPI Conversion Opinion"), *In re With Purpose, Inc.*, No. 23-30246-MVL7, With Purpose, Inc. ("WPI") Dkt. No. 396, at 38 (Bankr. N.D. Tex. Jan. 22, 2025), 2025 WL 271469, a true and correct copy of which is being submitted herewith as **Exhibit 1**; *see also* Order Denying Motion to Convert Case to Chapter 11, *In re With Purpose, Inc.*, No. 23-30246-MVL7, WPI Dkt. No. 398 (Bankr. N.D. Tex. Jan. 22, 2025), a true and correct copy of which is being submitted herewith as **Exhibit 2**.

2 *See* **Exhibit 3** (Transcript, Sept. 24, 2024, WPI Dkt. No. 349), 79:11-80:4. This testimony was given during the trial on the Amended Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code (*i.e.*, WPI Dkt. No. 275, hereinafter, the "WPI Conversion Motion").

1. As goes Yogi Berra's famous quote: "It's déjà vu all over again." Toby Neugebauer ("Neugebauer") has run this busted play before. In another court, against another chapter 7 trustee, and for the same reason – to stop litigation against him. Neugebauer lost. This time should be no different. Neugebauer's vexatious abuse of the bankruptcy process must be stopped.

2. Neugebauer's playbook has not changed. Neugebauer voluntarily put With Purpose, Inc. – GloriFi[3] – into chapter 7, just as he voluntarily put this Debtor into chapter 7. Neugebauer let the WPI case sit in chapter 7 for more than eighteen months.[4] Then, only when the chapter 7 trustee attempted to monetize the estate's causes of action *against him*, Neugebauer moved to convert the case to chapter 11 under section 706(a) and proposed a plan that would dismiss the trustee's lawsuit against Neugebauer.[5]

3. Neugebauer is running the same play here – *i.e.*, filing a tardy conversion motion for the purpose of dismissing litigation against himself. Neugebauer admits that, just like in WPI, Neugebauer came up with the idea to file the motion to convert on his own.[6] Moreover, just like in WPI, there is no plan to resuscitate the underlying business and no promise to pay any creditors (as evidenced by Neugebauer's deposition testimony). The one thing the Motion to Convert seeks to do (without qualification) is dismiss the Trustee's pending $7 million adversary proceeding filed by John Patrick Lowe, the duly-appointed chapter 7 trustee for the Debtor's estate (the "Trustee") against Neugebauer and his spouse (which is set for docket call next month).

---

[3] *See In re With Purpose, Inc.* No. 23-30246-mvl7, WPI Dkt. No. 1, Voluntary Petition, at 5; *see also In re Animo Bancorp, Inc.*, No. 24-50359-alt, Dkt. No. 1, Voluntary Petition, at 4.

[4] *See* Ex. 1 at 25-26.

[5] *See* Ex. 1 at 9-10, 26; *see also* WPI Dkt. No. 275-2, Debtor's Proposed Chapter 11 Plan (attached to the WPI Conversion Motion), at §§ 2.50 and 7.2 (providing that "[t]he Neugebauer Parties Adversary will be dismissed with prejudice within ten days after the Effective Date").

[6] *See* **Exhibit 4** (Neugebauer's Depo. Tr.) at 11:25-12:2, 12:10-20, and 61:16-17.

4. Judge Michelle V. Larson of the United States Bankruptcy Court for the Northern District of Texas held seven days of trial, heard multiple witnesses, and denied the motion to convert Neugebauer filed in the WPI case.[7] Judge Larson found that the WPI motion to convert "was filed to exact a litigation advantage in the bankruptcy, which constitutes an abuse of the bankruptcy process."[8] Judge Larson further found "no question that the Motion to Convert was filed as a litigation tactic to prevent the Adversary Proceeding from taking place."[9] And Judge Larson held that the WPI motion to convert was "a thinly-disguised motion to remove the Trustee" with "no purpose to Chapter 11, only a change of control."[10]

5. Wash, rinse, and repeat with the Conversion Ploy. Neugebauer's current Conversion Ploy arrives approximately two and a half years into a chapter 7 case the Debtor filed voluntarily. Approximately five months after the Trustee sued Toby and Melissa Neugebauer to recover $7,000,000. And shortly before Neugebauer's deposition, the close of discovery, the deadline for dispositive motions, and docket call. That is not a calendar coincidence. That is the reason for the filing (*i.e.*, Neugebauer knows that he will lose the pending adversary proceeding against him and filed the Conversion Ploy as his last-ditch effort to shirk liability). The Debtor does not hide the motivation for the filing. The Conversion Ploy makes clear: "The Plan will provide for the resolution and ***dismissal*** of the Adversary Proceeding." Mot. ¶ 25 (emphasis added).

6. That is the entire gambit. The defendants in a $7,000,000 fraudulent transfer action will purportedly ***lend*** $2,000,000 (with no obligation to actually fund) to the shell company they

---

7 *See* Ex. 1 at 10.

8 Ex. 1 at 26.

9 Ex. 1 at 26.

10 Ex. 1 at 38; *see also* Ex. 2.

own, so that the shell – restored to their control – can dismiss the $7,000,000 case against them, and then owe the defendants the $2,000,000 back (if the $2,000,000 is ever funded by the defendants in the first instance). Contrary to the misleading statements in Debtor's Motion, there is no promise to pay any creditors (in fact, Neugebauer's deposition testimony indicates that – if converted – Neugebauer will attempt to wipe out all the creditors). The Conversion Ploy is not designed to benefit the Estate or its creditors – only the Neugebauers. Fortunately, the Conversion Ploy fails for multiple independent reasons. Any one of them is enough.

7. First, the central purpose/motivation of the Conversion Ploy (*i.e.*, to dismiss the pending lawsuit against the Neugebauers) cannot be accomplished through the proposed conversion. On April 15, 2025, this Court – then-Chief Judge Gargotta – approved the sale of the Estate's rights in its causes of action to the Agent under sections 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code"), free and clear, and decreed that the Agent "shall have all authority and agency over the Causes of Action." Dkt. No. 27, at 2. The Agent Agreement this Court approved[11] provides that the Agent "shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action," and that "*[n]o other party shall be entitled to assert any Estate Causes of Action*." Dkt. No. 25-1 ¶ 17 (emphasis added). That Order is final. Neither the Debtor nor Neugebauer objected or appealed. No chapter 11 plan can confer on this Debtor a power the Estate itself no longer holds, and a section 706(a) motion is not a permissible vehicle for collaterally attacking a final sale order sixteen months after the fact.

---

[11] The "Agent Agreement" refers to the Agreement between the Trustee and the Agent, which is attached to the Motion to Approve Sale of Assets and for Approval of Litigation Sharing Arrangement (the "Agent Motion"). *See* Dkt. Nos. 25, 25-1. This Court approved the Agreement on April 15, 2025. *See* Dkt. No. 27, Order on Motion to Approve Sale of Assets and for Approval of Litigation Sharing Arrangement (the "Agent Order").

8. Moreover, for the reasons set forth herein (and those that will be presented during the hearing on the Debtor's Motion), the Motion should be denied because: (i) there is no purpose permitted under Chapter 11; (ii) the Conversion Ploy is nothing more than a litigation tactic; and (iii) if this case were converted, cause to reconvert would exist immediately.

9. In sum, the Debtor's Motion is simply a sequel of Neugebauer's failed conversion efforts in the related WPI case. Neugebauer's WPI conversion movie was bad, and – as we all know – sequels are almost always much worse. A tired plot. Lazy writing. And the entitled principal actors just "mailing it in" for the hope of one last lucrative windfall. Just so here, but all the more confusing as Neugebauer's WPI conversion production was a box office bomb. Neugebauer knows better. The filing is frivolous, strategic, and cynical. The Debtor's Motion makes a mockery of the efficient administration of the estate and the fundamental purpose of the Code. The Motion should be denied.

## II.
## THE AGENT HAS STANDING TO OBJECT

10. The Conversion Ploy proposes to destroy the very rights this Court conferred upon the Agent. This Court approved the Agent Agreement, decreed that the Agent "shall have all authority and agency over the Causes of Action as provided in the Agreement, and may appear and be heard in any court, and prosecute any Causes of Action, for and in the name of the Estate," and retained jurisdiction "to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order." Dkt. No. 27.

11. The Agent holds a "first priority lien and security interest in all of the Net Proceeds," which the Agent Agreement provides "shall be deemed unavoidable, fully and properly perfected by this Agreement and the Approval Order." Dkt. No. 25-1 ¶ 27. The Agent holds a

Preferred Recovery – $20,000 plus advanced Special Counsel Fees[12] plus incurred Agent Expenses[13] plus a one percent monthly return, compounded monthly – that this Court has already found "fair and reasonable" and "APPROVED without need for further application or order." *Id.* ¶ 24; Dkt. No. 27, at 3.

12. The Agent's expenses in "the pursuit of the litigation pursuant to the JPA *and the Bankruptcy Case*" are reimbursable. Dkt. No. 25-1 ¶ 26 (emphasis added). The Agent may "unilaterally assert, file and prosecute claim objections" in this case "without further order of the Court." *Id.* ¶ 29. The Agent is a "good-faith purchaser" under 11 U.S.C. § 363(m), entitled to the protections that status carries. Dkt. No. 27, at 3-4.

13. The Debtor proposes a plan that would extinguish every one of those rights without the Agent's consent.

## III.
## FACTUAL AND PROCEDURAL BACKGROUND

### A. The $7,000,000 Transfers Taken by the Neugebauers

14. Bancorp was formed on May 27, 2021, for one primary purpose: to acquire Ganado Bancshares, Inc., the holding company of Citizens State Bank of Ganado, Texas, to assist the GloriFi business. *See* Mot. ¶¶ 9-10. That acquisition (hereinafter, the "Ganado Acquisition") required the approval of the Board of Governors of the Federal Reserve System ("the Federal Reserve Board" or "FRB") under the Bank Holding Company Act of 1956, 12 U.S.C. § 1842. *Id.* ¶ 10. Approval was never obtained. Mot. ¶ 12.

---

[12] "Special Counsel Fees" refers to the fees, costs, and expenses incurred by Special Counsel (*i.e.*, special litigation counsel approved by this Court) in pursuing litigation, as set forth in paragraphs 21 and 25 of the Agent Agreement. *See* Dkt. No. 25-1.

[13] "Agent Expenses" refers to the fees, costs, and expenses incurred by the Agent in pursuing litigation, as set forth in paragraph 26 of the Agent Agreement. *See* Dkt. No. 25-1.

15. On October 7, 2021, Toby Neugebauer and Melissa Neugebauer – referred to in the Debtor's Motion as Bancorp's "Shareholders" – made a $7,000,000 "equity contribution to [the] Debtor," each funding $3,500,000. *Id.* ¶¶ 11, 13. [14] There was no promissory note.[15] No interest.[16] No maturity date.[17] No repayment obligation.[18] Toby Neugebauer admits that the equity contributions made by him and Melissa Neugebauer were not loans. *See* Ex. 4 (Neugebauer Dep. Tr.) at 48:8-13.

16. On November 14, 2022, The Capital Markets Company LLC ("Capco") sent Bancorp a demand letter for $396,904.38 in unpaid invoices.[19] Then, on November 30, 2022 – sixteen days after Capco made a demand for unpaid fees – Bancorp transferred $3,500,000 to Toby Neugebauer and $3,500,000 to Melissa Neugebauer (collectively, the "Transfers"). *See* Mot. ¶ 13.[20]

17. Shortly after the Transfers, Capco sued Bancorp to recover the amounts Capco claimed it was owed.[21] On August 28, 2023, a Final Judgment was issued in the amount of $396,904.38 (*i.e.*, the amount demanded) for a successful breach of contract claim, $72,098.50 in

---

14 In the Adversary Proceeding styled *John Patrick Lowe, Trustee v. Toby Neugebauer and Melissa Neugebauer*, Adv. No. 26-05011-alt (referred to herein as the "Neugebauer Adversary Proceeding"), Toby Neugebauer and Melissa Neugebauer ("Melissa") each served Objections and Responses to the Trustee's Sets of Discovery. Toby's Responses to the Trustee's First, Second, Third, and Fourth Sets of Discovery are attached hereto as **Exhibit 5**, and Melissa's Responses to the Trustee's First, Second, and Third Sets of Discovery are attached hereto as **Exhibit 6**. Both Toby and Melissa admit to each providing $3,500,000 to Bancorp on October 7, 2021. Ex. 5, RFA Nos. 4–5; Ex. 6, RFA Nos. 4–5.

15 *See* Ex. 5, RFA No. 6; Ex. 6, RFA No. 6.

16 *See* Ex. 5, RFA No. 7; Ex. 6, RFA No. 7.

17 *See* Ex. 5, RFA No. 8; Ex. 6, RFA No. 8.

18 *See* Ex. 5, RFA No. 9; Ex. 6, RFA No. 9.

19 As set forth below, Capco eventually sued Bancorp to recover this unpaid amount, which now forms the basis of Capco's Proof of Claim in this Bankruptcy. In the Neugebauer Adversary Proceeding, Neugebauer admitted Bancorp made no payments on such amount as of November 2022. *See* Ex. 5, RFA No. 37.

20 *See also* Ex. 5, RFA Nos. 16–17; Ex. 6, RFA No. 16.

21 This case was styled *The Capital Markets Company, LLC v. Animo Bancorp, Inc. a/k/a GloriFi Financial*, No. DC-22-17307, 14th Judicial District, Dallas County, Texas.

fees and expenses, and $19,736.53 in pre-judgment interest.[22] A few months after its motion for new trial was denied, Bancorp filed a suggestion of bankruptcy in the state court action.[23]

**B. The Agent Order**

18. On March 19, 2025, the Trustee moved to sell the Estate's rights in its causes of action – expressly including "various causes of action relating to pre-petition transfers of multiple millions of dollars made to or for the benefit of Debtor's principal" (*i.e.*, the Transfers) – and to approve a litigation sharing arrangement with the Agent (*i.e.*, the Agent Agreement). Dkt. No. 25 ¶¶ 1, 6.

19. Nobody objected. Not the Debtor. Not its shareholders (*i.e.*, the Neugebauers). On April 15, 2025, then-Chief Judge Gargotta signed the Agent Order. *See* Dkt. No. 27. Among other things, the Agent Order:

> (a) approved the Agreement and decreed "that it shall govern according to its terms";
>
> (b) decreed "that GloriFi shall have all authority and agency over the Causes of Action as provided in the Agreement, and may appear and be heard in any court, and prosecute any Causes of Action, for and in the name of the Estate";
>
> (c) decreed that the sale of the Estate's rights related to the Causes of Action "shall, pursuant to 11 U.S.C. §§ 363(b) and (f), be free and clear of all liens, claims, interests, and encumbrances of any kind or type";
>
> (d) decreed that the sale and assignment "shall constitute a legal, valid, and effective transfer, and will vest GloriFi with all right, title, and interest of the Debtor's Estate in transferred rights to the Causes of Action";
>
> (e) found the Agent "a good-faith purchaser within the meaning of 11 U.S.C. § 363(m)";

---

[22] A true and correct copy of this Final Judgment is attached to Capco's Proof of Claim filed in this bankruptcy case.

[23] Specifically, the Dallas County court denied Bancorp's motion for new trial on November 15, 2023, and Bancorp filed a suggestion of bankruptcy on March 8, 2024.

> (f) approved the Agent's preferred recovery as "fair and reasonable" and "APPROVED without need for further application or order"; and
>
> (g) decreed that "this Order is a final order and the fourteen-day stay provided in Fed. R. Bankr. P. 6004(h) or any other provisions staying this Order does not apply to this Order and the Trustee may close the sale immediately upon entry of this Order."

No party appealed. The Agent Order is final.

**C. The Neugebauer Adversary Proceeding**

20. On March 2, 2026, the Trustee commenced the Neugebauer Adversary Proceeding, asserting various causes of action against the Neugebauers. *See* Adv. Dkt. No. 1. The Neugebauers answered on April 1, 2026. Adv. Dkt. No. 3. A scheduling order issued April 7, 2026. Adv. Dkt. No. 6. The deadline to amend pleadings expired June 8, 2026. *Id.*

21. The Conversion Ploy calls the Neugebauer Adversary Proceeding a case "in its early stages." *See* Mot. ¶ 18. That is wrong. This case is nearing trial (docket call is scheduled for October 26, 2026). Neugebauer knows he will lose. And that is why Neugebauer filed the Conversion Ploy.

**D. The First Time Neugebauer Tried This**

22. Toby Neugebauer is not new to section 706(a). Neugebauer is not new to attempting to convert a chapter 7 case to 11 to remove a trustee who filed suit against him. And Neugebauer is not new to losing this gambit. For Neugebauer, the exercise is the point: delay.

23. On February 8, 2023, Toby Neugebauer signed a voluntary chapter 7 petition putting With Purpose, Inc. – GloriFi – into bankruptcy in the Northern District of Texas.[24] Scott M. Seidel was appointed trustee.[25] For more than a year, that case proceeded in chapter 7 while

---

24 *See* WPI Dkt. No. 1, Voluntary Petition.

25 *See* Ex. 1 at 2.

the trustee worked to monetize the estate's only meaningful assets – its causes of action – and obtained a bid procedures order over Toby Neugebauer's objection.[26] On the very day that order was entered, the Neugebauer Parties and their collateral agent filed lawsuits in Georgia and Delaware asserting claims that belonged to the estate.[27] The trustee sued.[28] And then, on July 10, 2024 – *after* the trustee sued him – Neugebauer caused the WPI debtor to file a motion to convert the WPI case to chapter 11 under section 706(a) (*i.e.*, the WPI Conversion Motion).[29]

24. The plan Neugebauer proposed on August 26, 2024, carved the claims against himself out of the litigation trust, put himself on the three-member committee that would control all decisions to prosecute or settle, offered a $2,000,000 debtor-in-possession facility (*i.e.*, identical to the amount here) from an entity his lifelong friend allegedly managed, and provided that the trustee's adversary proceeding "will be dismissed with prejudice within ten days after the Effective Date."[30]

25. Judge Larson held seven days of trial and heard multiple witnesses.[31] On January 22, 2025, Judge Larson denied the motion to convert, and on January 24, 2025, she entered the order denying it.[32] Judge Larson's findings are not ambiguous:

---

26 *See* Ex. 1 at 4-5.

27 *See* Ex. 1 at 5-6. The court ultimately concluded that the filing of these lawsuits "was to intentionally disrupt the Trustee's auction process and cause disarray into who owns certain causes of action, which ultimately led to the auction never occurring." *Id.* at 26.

28 *See* Ex. 1 at 7.

29 *See* Ex. 1.

30 *See* WPI Dkt. No. 275-2, Debtor's Proposed Chapter 11 Plan (attached to the WPI Conversion Motion), at ¶¶ 2.34, 2.35, 2.72, 7.1, 7.2, 7.5, 8.4; *see also* Ex. 1 at 33.

31 *See* Ex. 1 at 26.

32 *See* Ex. 1; *see also* Ex. 2.

> *Likewise, the Court finds that the Motion to Convert was filed to exact a litigation advantage in the bankruptcy, which constitutes an abuse of the bankruptcy process. . . . The Trustee filed the Adversary Proceeding in response to the DEGA Litigation. The Motion to Convert was filed only after the Trustee filed the Adversary Proceeding. There is no question that the Motion to Convert was filed as a litigation tactic to prevent the Adversary Proceeding from taking place. In fact, the Debtor's proposed plan seeks to dismiss the Adversary Proceeding with prejudice.*
>
> -WPI Conversion Opinion, at 26 (**Ex. 1**).

26. Judge Larson found there was nothing to reorganize: "the Debtor is unquestionably not an operating business, does not have any source of income or liquid assets; therefore, it has no going concern value to preserve in Chapter 11 through reorganization."[33] Judge Larson found that "[t]here was never a plan to rehabilitate or reorganize the Debtor."[34] Judge Larson found that the promised $2,000,000 was not there: "The Collateral Agent currently does not have the money together to fund the DIP Facility."[35] And Judge Larson found that "at least two section 1112(b)(4) 'causes' exist for denying conversion."[36]

27. Judge Larson was not fooled. She easily figured out and stated who was pulling the strings:

> *After days and days of testimony, the Court is flatly unconvinced that Mr. Neugebauer is not 'the man behind the curtain' in this bankruptcy case. Mr. Neugebauer is the CEO of the Debtor, the largest equity holder, a potential litigation target, and the largest holder of Series 2 notes, meaning that he has the most to gain should the case be converted.*
>
> -WPI Conversion Opinion, at 33 (**Ex. 1**).

28. Judge Larson's conclusion says it all and perfectly summarizes why Neugebauer's latest Conversion Ploy in this case should be similarly denied:

---

33 Ex. 1 at 30.

34 Ex. 1 at 28.

35 Ex. 1 at 35.

36 Ex. 1 at 37.

> *Likewise, if prepetition history is a guide, the Motion to Convert is an attempt by Mr. Neugebauer to control the Debtor, which he voluntarily put into Chapter 7. The Motion to Convert is a thinly-disguised motion to remove the Trustee. There is no purpose to Chapter 11, only a change of control. After eighteen months in Chapter 7 and numerous litigation tactics, which the Court finds to be a collective abuse of the bankruptcy process, the Court finds that conversion would be improper.*
>
> -WPI Conversion Opinion at 38 (**Ex. 1**).

29. That was not the end of it. On June 17, 2025, in the adversary proceeding Neugebauer hoped to derail through the WPI Conversion Motion, Judge Larson found that the collateral agent and the Neugebauer Parties "willfully violated the automatic stay by filing the DEGA Litigation," enjoined them from pursuing it, and reserved damages for a later trial.[37]

30. On January 2, 2026, after the liability trial and a damages trial, the court entered its findings on damages.[38] Judge Larson found "no 'fair ground of doubt'" that "the Defendants' conduct was intentional and wrongful."[39] Judge Larson found that "[t]he Trustee intended to sell a number of these causes of action at auction, and the Defendants purposely and thoroughly interfered with that process."[40] Judge Larson found that "[c]reditor distribution was hindered, and the estate was harmed."[41] Judge Larson sanctioned Neugebauer accordingly:

---

37 *See* **Exhibit 7** – Memorandum Opinion, Findings of Fact, and Conclusions of Law, *Scott M. Seidel, Trustee v. Toby Neugebauer, et al. (In re With Purpose, Inc.)*, Adv. Pro. No. 24-03038-MVL, WPI Dkt. No. 563, Adv. Dkt. No. 145, at 86 (Bankr. N.D. Tex. June 17, 2025).

38 *See* **Exhibit 8** – Findings of Fact and Conclusions of Law After Damages Portion of Trial, *Scott M. Seidel, Trustee v. Toby Neugebauer, et al. (In re With Purpose, Inc.)*, Adv. Pro. No. 24-03038-MVL, Adv. Dkt. No. 175 (Bankr. N.D. Tex. Jan. 2, 2026).

39 Ex. 8 at 21, ¶ 50.

40 Ex. 8 at 22, ¶ 57.

41 Ex. 8 at 23, ¶ 57 (emphasis omitted).

*Accordingly, as damages for violation of the automatic stay and willful disregard of Court orders, the Court awards damages to the Trustee in the amount of $933,547.01, with $99,889.53 against the Collateral Agent and $833,657.48 against the Neugebauer Parties (who are jointly and severally liable amongst each other).*[42]

A federal bankruptcy judge unequivocally found Toby Neugebauer, after an evidentiary trial, to have filed a section 706(a) motion as a litigation tactic to stop a trustee's lawsuit against him, and to have abused the bankruptcy process in doing it. Neugebauer was found to have acted intentionally and wrongfully and to have harmed a bankruptcy estate and its creditors. Neugebauer was sanctioned $833,657.48 for his bad acts. Eighteen months later, Neugebauer – ***unbelievably*** – is running the same play (which previously failed so spectacularly). Neugebauer cannot be put in control of this estate. The Conversion Ploy must be denied.

## IV.
## ARGUMENT AND AUTHORITIES

### A. Section 706(a) Confers No Absolute Right to Convert; this Court May Deny Conversion for Bad Faith, Abuse of Process, or Futility

31. The Debtor's legal theory in the Conversion Ploy – *i.e.*, that the Debtor has an alleged "absolute right of conversion" – rests on a phrase from a 1978 Senate Report. Mot. ¶ 28 ("one-time absolute right of conversion"). But Supreme Court and Fifth Circuit case law shows that, in circumstances such as these, denial of a motion to convert is appropriate.

32. In *Marrama v. Citizens Bank of Massachusetts*, the Court held that "[t]he words 'unless the debtor may be a debtor under such chapter' expressly conditioned [a debtor's] right to convert on his ability to qualify as a 'debtor'" under the chapter to which conversion is sought. 549 U.S. 365, 372 (2007) (quoting 11 U.S.C. § 706(d)). Because the target chapter permits dismissal or conversion "for cause," and because bankruptcy courts routinely treat bad-faith

42 Ex. 8 at 27, ¶ 71 (emphasis omitted).

conduct as "cause," a debtor's bad faith can disqualify him from being a debtor under that chapter and defeat conversion. *Id.* at 373. The Court held separately that section 105(a)'s authority "to take any action that is necessary or appropriate 'to prevent an abuse of process' . . . is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375. And it confirmed that every federal court holds inherent power "to sanction abusive litigation practices." *Id.* at 375-76 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)).

33. Nothing in Section 706 or *Marrama* is confined to chapter 13. Section 706(a) is one statute governing conversion to chapters 11, 12, and 13 alike, and the qualification condition in section 706(d) applies to all three. *See* 11 U.S.C. §§ 706(a), 706(d). Courts routinely apply *Marrama*'s framework to chapter 11 conversions as well. *In re Zamora-Quezada*, 622 B.R. 865, 877-78 (Bankr. S.D. Tex. 2017). Where the target is chapter 11, to determine whether a party is eligible to be a chapter 11 debtor, the qualification inquiry runs through section 1112(b), which directs that the court "shall convert a case under this chapter to a case under chapter 7 . . . for cause." 11 U.S.C. § 1112(b)(1). The Fifth Circuit has embraced *Marrama*'s principle that a debtor's statutory chapter-shifting rights yield to bad-faith conduct and has long taught that the good-faith requirement "protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons . . . available only to those debtors and creditors with 'clean hands.'" *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (discussing the "standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings," which has been incorporated into "[e]very bankruptcy statute since 1898").

34. Courts accordingly deny conversion where it would be futile – where the converted case would be immediately subject to reconversion or dismissal. *See Daughtrey v. Rivera (In re Daughtrey)*, 896 F.3d 1255, 1276 (11th Cir. 2018) (requiring conversion before immediate reconversion "would place form over substance and defy common sense"); *In re Kearney*, 625 B.R. 83, 96 (B.A.P. 10th Cir. 2021) (refusing, in the section 1112(a) posture, the "procedural anomaly" of converting a case only to convert it back); *In re Foster*, 530 B.R. 650, 654 (N.D. Tex. 2015) (denying a motion to convert "that would have been futile under the circumstances"); *Dan Thomason & Assocs., LLC v. Breakwell*, No. 3-10-CV-00379-K, 2010 WL 3385025, at *1-2 (N.D. Tex. Aug. 25, 2010) (denying a motion to convert to chapter 11 because it would be an "exercise in futility," since the debtor would not be able to finance a reorganization or manage itself); *In re NLG, LLC*, No. 21-11269 (JKS), 2023 WL 2053920, at *10 (Bankr. D. Del. Feb. 16, 2023) (converting a case "to obtain tactical litigation advantages is not within the legitimate scope of bankruptcy laws and would be an abuse of the bankruptcy process"). The Supreme Court has blessed the approach: "in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code." *Law v. Siegel*, 571 U.S. 415, 426 (2014).[43]

35. The Debtor's Motion should be denied for the reasons set forth herein, and it is not a close call.

[43] The Debtor's Motion does not cite *Law v. Siegel*, but the Neugebauer side raised it in the *With Purpose* conversion fight through its collateral agent, arguing that *Law* undermined *Marrama*. Judge Larson rejected the argument as "wholly unpersuasive," and correctly so: *Law* expressly distinguished *Marrama* and reaffirmed that "the debtor's bad faith could stop him from qualifying as a debtor under Chapter 13, thus preventing him from satisfying § 706(d)'s express condition on conversion." *See* Ex. 1 at 22; *see also* 571 U.S. at 425-26.

**B. The Purpose of the Conversion Ploy is to Allow Neugebauer to Dismiss the Lawsuit Against Him; but this Court's Final Order Prohibits that Inequitable Result**

36. The Conversion Ploy makes only one concrete promise: "The Plan will provide for the resolution and dismissal of the Adversary Proceeding upon the effective date and full funding of the Plan distributions." Mot. ¶ 25.

37. But the Debtor cannot deliver on that promise. Not because a plan may never settle an estate claim, but because this Estate no longer holds the authority to dismiss or settle the pending claims against the Neugebauers. This Court sold that authority to the Agent, for consideration, free and clear, under sections 363(b) and (f), by an order that is final and no longer subject to appeal. *See* Dkt. No. 27.

38. The Agent Agreement this Court approved could not be plainer:

> **17. Agent Sole Authority.** *Subject only to the Major Decisions described below, Agent shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action. No other party shall be entitled to assert any Estate Causes of Action, as such sole authority over Estate Causes of Action is vested in the Agent.*

Dkt. No. 25-1 ¶ 17 (emphasis added). The "Estate Causes of Action" reach every cause of action owned by the Estate, "whether known or unknown, foreseen or unforeseen," expressly including "claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code," with a single carve-out for claims against Field Manning Stone Aycock, PC (which were previously resolved). *Id.* ¶¶ 10-11. Counts I through VII of the Neugebauer Adversary Proceeding arise under sections 544, 548, 550, and 502(d).[44] The claims against the Neugebauers sit squarely inside the definition.

---

[44] *See* Trustee's Original Complaint, Adv. Dkt. No. 1, § V.

39. The very act the plan proposes – resolving and dismissing the Neugebauer Adversary Proceeding – is the one the Agent Agreement fences off most specifically. Such decision constitutes a "Major Decision" under the Agent Agreement *See* Dkt. No. 25-1, ¶ 19. The Trustee himself is "entitled to advise, but not direct, the Agent's prosecution of any Estate Causes of Action." *Id.* ¶ 20. If the Trustee cannot direct this litigation, neither can a chapter 11 debtor controlled by the defendants.

40. And this is not merely a contract between two parties. It is a ***decree of <u>this</u> Court***. The Order provides that the Agreement "is APPROVED and . . . shall govern according to its terms"; that "GloriFi shall have all authority and agency over the Causes of Action as provided in the Agreement, and may appear and be heard in any court, and prosecute any Causes of Action, for and in the name of the Estate"; and that the sale "shall constitute a legal, valid, and effective transfer," vesting the Agent with "all right, title, and interest of the Debtor's Estate in transferred rights to the Causes of Action, free and clear of all liens, claims, interests, and encumbrances of any kind or type pursuant to 11 U.S.C. §§ 363(b) and (f)." Dkt. No. 27, at 1-3. The Conversion Ploy is an impermissible collateral attack on this Court's final order. *See In re Shipley Garcia Enterps. Inc.*, 2014 WL 1329252, at *12 (Bankr. S.D. Tex. 2014) (citing *In re Baudoin*, 981 F.2d 736, 740-44 (5th Cir. 1993)).

41. Neugebauer is aware of the fact that he is unable to challenge the Agent Agreement on appeal, having failed to object and obtain a stay – any appeal is therefore rendered statutorily moot. *See* 11 U.S.C. § 363(m); *In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014). Thus, dissatisfied with being named a defendant in an adversary proceeding, Neugebauer needed another method to try and wrest control from the Trustee and Agent. This one also fails.

42. It is indisputable that the Court has jurisdiction to enter an order under section 363. A sale order entered by a court of competent jurisdiction is a final judgment, regardless of whether the sale neither closes the case nor disposes of any claim. *Hendrick v. Avent*, 891 F.2d 583, 586 (5th Cir. 1990). The importance of 363(m) cannot be overstated – it is a defining principle in protecting *bona fide* purchasers and, conversely, the creditors who are the beneficiaries of the sale proceeds.

43. As stated by the Fifth Circuit: "The limits on reversal or modification imposed by Section 363(m) serve the interests of finality and certainty, and by extension, encourage bidding for estate property. 'If deference were not paid to the policy of speedy and final bankruptcy sales, potential buyers would not even consider purchasing any bankrupt's property.'" *In re Fieldwood Energy LLC*, 93 F.4th 817, 822 (5th Cir. 2024).

44. Applied here, the attempted circumvention, or unwinding, of the Agent Agreement by virtue of the Conversion Ploy is an effort to not only avoid the appropriate remedy – appeal – but a faulty effort to undermine the process Neugebauer failed to participate in. The sale approving the Agent Agreement was an *in rem* proceeding that effectuated a transfer "that is good against ***the world*** – not just ***parties***," and Neugebauer cannot now seek to undercut this Court's authority in yet another thinly disguised attempt to remove control from a bankruptcy trustee. *See In re Hereford Biofuels, LP*, 466 B.R. 841, 859 (Bankr. N.D. Tex. 2012) (emphasis in original). Whether brought as an adversary proceeding, a motion to convert, or otherwise, an attempt to unwind a final sale order through any method other than the appropriate process, appeal, is an improper collateral attack on a final judgment. *See id.* Section 1123(b)(3)(A) permits a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). A plan cannot settle what the estate has already sold, and confirmation is

not a mechanism for repurchasing, for free, a property right this Court transferred for value. The Fifth Circuit has expressly approved the sale of estate causes of action, including avoidance actions. *Briar Capital Working Fund Capital, L.L.C. v. Remmert (In re South Coast Supply Co.)*, 91 F.4th 376, 381-82, 384 (5th Cir. 2024); *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 262 (5th Cir. 2010). It necessarily follows that the sale of a right to *control* estate causes of action is in and of itself an inalienable interest in property. That is precisely what happened here, and it is why the Debtor's Motion constitutes an impermissible collateral attack on this Court's final order.

45. No residual plan power fills the gap. In *Harrington v. Purdue Pharma L.P.*, the Supreme Court held that the Bankruptcy Code does not authorize a plan to extinguish claims against a nondebtor without the consent of those affected, and that section 1123(b)'s catchall cannot be read to confer "radically different" powers than the ones Congress enumerated. 603 U.S. 204, 205, 218 (2024). What the Conversion Ploy proposes is *Purdue*'s problem in a harder form: a plan, funded and controlled by the defendants, that extinguishes litigation against the defendants, and rights that this Court sold to a third party for value. The affected party is the Agent. The Agent does not consent.

46. The Debtor had its chance to object to the sale, and it passed. The Debtor filed nothing. The Agent Order was entered on April 15, 2025. *See* Dkt. No. 27. The Debtor did not appeal. A final order of this Court is not subject to collateral attack sixteen months later. The Debtor cannot accomplish by section 706(a) what it declined to pursue by objection or appeal. And that is exactly what the Motion is – a belated, backdoor objection.

**C. There Is No Purpose Permitted Under Chapter 11**

47. Chapter 11 exists to preserve the ***going***-concern value of a business and to maximize the property available to satisfy creditor claims. *See Bank of Am. Nat'l Trust & Sav.*

*Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (emphasis added). Neither purpose is present, and the Debtor concedes it in its own Motion – repeatedly.

48. There is no business. "With the failure of the corporate purpose that Debtor was originally formed to achieve, Debtor wound down its activities." Mot. ¶ 12. There is no bank, because the Federal Reserve never approved one. *Id.* There is no $28,000,000 note, because it never funded. *Id.* ¶¶ 11-12. There is no revenue: the estate "currently has no operating revenue." *Id.* ¶ 2. There are no assets: the Debtor's "only scheduled asset is $203.00 in cash." *Id.* ¶ 37. A company with no revenue, no receivables, and no deposits for fifteen months is not a business in hibernation. It is a zombie corpse holding a charter.

49. And there is no plan to build anything. The Motion's own description of what conversion preserves is not based on reality, but on the mantra "anything is possible": the conversion plan "keeps the financial services platform available *should* the reorganized Debtor's shareholders *elect* to pursue future business opportunities in financial services." *Id.* ¶¶ 3, 22, 35 (emphasis added). That is not a reorganization. That is an option to think about it later, and the Debtor asks this Court to convert a chapter 7 case so that its shareholders (*i.e.*, the Neugebauers), who filed this Motion, may keep the option open while the lawsuit against them goes away.

50. The Debtor's cited case law merely references general principles that do not support conversion under the present circumstances. In *Toibb v. Radloff*, the Supreme Court held that an individual debtor not engaged in ongoing business is simply *eligible* for chapter 11 reorganization. 501 U.S. 163 (1991). And *Matter of Texas Extrusion Corp.* merely guides a bankruptcy court to consider whether conversion "will most inure to the benefit of all parties in interest." 844 F.2d 1142, 1161 (5th Cir. 1988). Neither of these cases supports the Debtor's supposed purpose for conversion. And, importantly, courts consistently hold that conversion to chapter 11 is

inappropriate where there is nothing to reorganize and the move serves only a litigation objective. *See, e.g., NLG*, 2023 WL 2053920, at *10.

51. Judge Larson confronted a materially stronger record than this one – a debtor with $595,956.41 in scheduled assets, a retired bankruptcy judge proposed as chief restructuring officer, a restructuring support agreement, a filed plan, and a filed disclosure statement – and found no chapter 11 purpose.[45] Here there is no CRO, no plan, and no disclosure statement.[46] In sum, there is no purpose permitted under chapter 11 and, thus, the Debtor's Motion should be denied.

**D. The Conversion Ploy Is a Litigation Tactic**

52. A motion filed to gain advantage in pending litigation against the movant's principals is an abuse of the bankruptcy process, and section 105(a) authorizes its immediate denial. *See Marrama*, 549 U.S. at 375; *NLG*, 2023 WL 2053920, at *10.[47]

53. The sole purpose of the Conversion Ploy is simple: "the resolution and dismissal of the Adversary Proceeding." Mot. ¶ 25. The Debtor does not describe the dismissal as a benefit to creditors incidental to reorganization. This is because the only ones who would benefit from the dismissal of the Neugebauer Adversary Proceeding are the individuals behind the filing of the Conversion Ploy – the Neugebauers.

54. Two years and five months of silence, and then a Conversion Ploy on the eve of depositions, dispositive motions, and trial. If the Debtor truly intended to reorganize, it had years to do so. The *only* reason for filing the Conversion Ploy is for the Neugebauers to avoid liability. That is bad faith – especially considering the history (specifically, the fact that Toby Neugebauer tried the same scheme in the WPI case and was sanctioned nearly $1 million by Judge Larson).

[45] *See* Ex. 1 at 2, 10, 29-30, 33-35; *see also* WPI Dkt. No. 275-2.

[46] *See, e.g.*, Ex. 4 (Neugebauer Depo. Tr.) at 15:5-9; 56:13-21; 56:22-57:10; 104:8-12.

[47] *See also* Ex. 1 at 26, 30.

Case 25-30094-mvl Doc 52-1 Filed 09/21/26 Entered 09/21/26 18:24:29 Page 22 of 28

### E. If This Case Were Converted, Cause to Reconvert Would Exist Immediately

55. The Debtor claims its desired converted case "would not immediately be subject to reconversion or dismissal for cause under Section 1112(b)." Mot. ¶ 30. The Debtor is wrong. The following grounds for dismissal or reconversion set forth in section 1112(b) are present here.

56. **Substantial or continuing loss to or diminution of the estate, and no reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).** This estate holds $203.00 in scheduled assets against nearly two and a half years of accrued chapter 7 administrative expense, including the Trustee's statutory compensation and the allowed fees of his professionals. *See* Dkt. No. 1. Conversion would layer a chapter 11 on top: Debtor's counsel, United States Trustee quarterly fees, plan and disclosure statement litigation (including, as discussed below, litigation related to the claim objections Neugebauer clearly intends to pursue if the case is converted in Neugebauer's attempt to wipe out all creditors and pay no one), and the Agent's expenses, which the Agent Agreement makes payable from Net Proceeds and which include expenses incurred in "the pursuit of the litigation pursuant to the JPA ***and the Bankruptcy Case***." Dkt. No. 25-1 ¶ 26 (emphasis added). There is no rehabilitation to weigh against that cost, because there is nothing to rehabilitate.

57. **Inability to propose a confirmable plan or effectuate substantial consummation of a confirmed plan. 11 U.S.C. § 1112(b)(4)(J), (M).** A fundamental requirement of Chapter 11 is that the proposed reorganization comply with both sections 1123(a) and 1129(a). Critically, one of the requirements of section 1129 is the best interest of creditors test. As codified: "With respect to each impaired class of claims or interests – each holder of a claim or interest of such class – has accepted the plan; or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A).

58. Thus, in order for a chapter 11 plan of reorganization to be confirmed, creditors must receive at least as much as they would in a chapter 7 liquidation or consent to lesser treatment. *In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1167 (5th Cir. 1993); *In re Couture Hotel Corporation*, 536 B.R. 712, 736 (Bankr. N.D. Tex. 2015). Here, there is no evidence that creditors would consent to lesser treatment, nor would they, when the Trustee is *already pursuing claims* that would fully and finally satisfy them. The inability of a debtor to confirm or consummate a confirmed Chapter 11 plan is grounds for dismissal or conversion of the bankruptcy case. 11 U.S.C. § 1112(b); *In re Cantu*, 398 Fed. Appx. 76, 79 (5th Cir. 2010); *In re M.A.R. Designs & Construction, Inc.*, 653 B.R. 843, 863-64 (Bankr. S.D. Tex. 2023).

59. This is critical when looking at *Marrama* and *Law*: denial of conversion that "would have been futile under the circumstances" is "essentially the meaning the Fifth Circuit gave to *Marrama* in *In re Jacobsen*, 609 F.3d 647, 660-61 (5th Cir. 2010)." *In re Foster*, 530 B.R. 650, 654 (N.D. Tex. 2015). What the creditors would be paid is a fundamental consideration of the Debtor's ability to qualify under section 1112(b)(4) – as the failure to pay out to creditors in any meaningful way is necessarily a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

60. Notwithstanding the futility in approving a conversion to a Chapter 11 case where the plan proponent has admitted the creditors will be worse off than in a Chapter 7 liquidation, other courts likewise look at the benefit to creditors when considering the bad faith inherent in a conversion motion. *See In re Coley*, 679 B.R. 183, 193 (Bankr. D.N.J. 2026); *In re Johnson*, 634 B.R. 806, 822 (Bankr. D. Colo. 2021).

61. Taken together, the Debtor's (*i.e.*, Neugebauer's) motivation in the Conversion Ploy is *not* that of goodwill to have the creditors repaid. Instead, it is driven solely by the opposite

motivation – to avoid paying anyone (including the creditors, the Trustee, and the Trustee's professionals) and deny the Debtor's creditors any meaningful recovery. It is another attempt to abuse the Bankruptcy Code to unwind an otherwise valid sale to a *bona fide* third party. This cannot stand.

62. The Debtor's Motion claims that, under the proposed conversion, "holders of allowed general unsecured claims will be offered a prompt cash distribution equal to ***one-hundred percent (100%)*** of their allowed claims."[48] But Neugebauer's deposition reveals Neugebauer's true intentions following conversion – *i.e.*, object to, and attempt to wipe out, all creditors and only pay himself and his wife.

63. The Debtor's Motion proposes placing Neugebauer (an individual sanctioned to the tune of almost $1 million for abusing the bankruptcy process by another federal bankruptcy court judge in a related proceeding) in control of the Debtor's estate.[49] When asked during his deposition, Neugebauer confirmed that he cannot identify the creditors who will be paid if the Debtor's Motion is granted and the case is converted:

> Q: Yes or no, can you tell me the creditors who would get paid under your proposed plan?
>
> A: I cannot tell you at this point in time.

*See* Ex. 4 (Neugebauer Depo. Tr.) at 54:3-5.

64. Neugebauer further testified that (i) only the "people that actually have legitimate payables" will be paid if converted (although Neugebauer cannot identify who those people are); and (ii) that Neugebauer "obviously believe[s] there's a dispute on who is a creditor and who is

---

48 *See* Mot. ¶ 1 (emphasis in original).

49 *See* Ex. 4 (Neugebauer Depo. Tr.) at 14:5-8.

not."[50] The largest creditors listed on the claims register in this case are the following: (i) Predictive Analytics Group, Inc. ("Predictive Analytics") (amount claimed - $252,655.00); (ii) Birmingham Financial Center, LLC ("Birmingham Financial") (amount claimed - $35,065.59); (iii) the Capital Markets Company LLC ("Capco") (amount claimed - $505,784.55); and (iv) Personetics Technologies, Inc. ("Personetics") (amount claimed - $466,340.00). Neugebauer's deposition testimony reveals that Neugebauer disputes or questions the legitimacy of ***all*** these claims.

65. With respect to the claim of Predictive Analytics, Neugebauer testified that Predictive Analytics did "nothing" in connection with Animo Bancorp and that, in Neugebauer's view, Predictive Analytics' proof of claim constitutes "fraud."[51] With respect to Birmingham Financial's proof of claim, Neugebauer testified that he would need to "diligence" whether Birmingham Financial did anything for Animo Bancorp and whether Birmingham Financial should be paid.[52] With respect to Capco, Neugebauer testified it is "absolutely" his view that Capco was not actually performing services for Animo Bancorp, and Neugebauer further testified that he believes Capco's proof of claim is based on "perjury."[53] With respect to Personetics, Neugebauer testified that he believes Personetics was performing services for WPI or another related entity under the GloriFi umbrella, but not Animo Bancorp.[54]

66. In sum, the Debtor's Motion is based on a false premise. The Debtor's Motion leads the reader (*e.g.*, this Court and the creditors) to believe that *all* creditors will be *promptly paid in full* if this case is converted. That is not the case; not even close. Neugebauer's deposition

---

50 *See* Ex. 4 (Neugebauer Depo. Tr.) at 13:13-22; 93:22-94:1.

51 *See* Ex. 4 (Neugebauer Depo. Tr.) at 17:22-18:9; 19:4-15.

52 *See* Ex. 4 (Neugebauer Depo. Tr.) at 22:12-25.

53 *See* Ex. 4 (Neugebauer Depo. Tr.) at 32:6-9; 33:19-21; 80:22-82:15

54 *See* Ex. 4 (Neugebauer Depo. Tr.) at 34:1-18.

testimony reveals his true intent through the Conversion Ploy – (1) dismiss the valuable claims against himself and his wife for nothing; (2) attempt to wipe out all the creditors through costly and time-consuming claim objections; and (3) pay no one other than himself and his wife. This latest Conversion Ploy – just like the prior one Neugebauer caused to be filed in the WPI case – should be denied.

## V.
## CONCLUSION AND PRAYER

67. For these reasons and those that will be presented at the hearing on the Debtor's Motion, the Agent respectfully requests that the Court deny the Debtor's Motion. The Agent reserves all rights, and files this Objection without waiver of any of them.

Respectfully submitted,

*/s/ Chase J. Potter*

**CHASE J. POTTER**
Texas State Bar No. 24088245
potter@imcplaw.com
**Greg McAllister**
Texas State Bar No. 24071191
greg@imcplaw.com
**JOSHUA J. IACUONE**
Texas State Bar No. 24036818
josh@imcplaw.com
**JOSHUA L. SHEPHERD**
Texas State Bar No. 24058104
shepherd@imcplaw.com
**JESSE A. OKIROR**
Texas State Bar No. 24065843
jesse@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Avenue, Suite 1112
Dallas, Texas 75206
(214) 432-1536 - Telephone

**COUNSEL FOR THE AGENT AND SPECIAL COUNSEL FOR THE TRUSTEE**

**-AND-**

**KILPATRICK TOWNSEND & STOCKTON LLP**

**PAUL M. ROSENBLATT**
Georgia Bar No. 614522 (admitted *pro hac vice*)
E-Mail: prosenblatt@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6321

**COUNSEL FOR THE AGENT**

**CERTIFICATE OF SERVICE**

I certify that on September 21, 2026, a true and correct copy of the foregoing was served on all parties receiving electronic notice through the Court's ECF system, and upon the parties on the Service List appended hereto by United States mail, first class, postage prepaid.

*/s/ Chase J. Potter*

**CHASE J. POTTER**