**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**WITH PURPOSE, INC.,**<br><br>**DEBTOR.** | §<br>§<br>§<br>§<br>§<br>§<br>§ | <br>**Case No. 23-30246-MVL-7**<br><br>**Chapter 7** |
| **SCOTT M. SEIDEL, TRUSTEE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BANZAI ADVISORY GROUP, LLC AND TOBY NEUGEBAUER,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary No. 25-03009-MVL** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION FOR PROTECTIVE ORDER REGARDING DEFENDANTS' NOTICES OF NON-PARTY SUBPOENAS**

Defendants Banzai Advisory Group, LLC ("Banzai") and Toby Neugebauer ("Neugebauer," and together with Banzai, "Defendants") file this Response in Opposition to the Trustee's Motion for Protective Order Regarding Defendants' Notices of Non-Party Subpoenas [Adv. Dkt. No. 54] (the "Motion"), and respectfully show as follows:

## I. SUMMARY OF RESPONSE

The Motion asks the Court to do something extraordinary: to bar a defendant from taking two non-party depositions, inside the discovery period this Court set, without a single fact showing that either witness would suffer annoyance, embarrassment, oppression, or undue burden. Rule 26(c) requires "a particular and specific demonstration of fact." The

Trustee offers rhetoric instead. The Motion opens with the assertion that "[t]he GloriFi walls are closing in on Toby Neugebauer," devotes most of its pages to unrelated proceedings in other courts, and never once engages with what the subpoenas actually seek.

What they seek is narrow and squarely relevant. Richard L. ("Rick") Jackson and Vivek Ramaswamy were investors in GloriFi during the very period at issue. The subpoenas ask whether GloriFi asked them for capital or financing for the credit card program in the months before Banzai made its $5 million loan to GloriFi Receivables Acquisition Company, LLC ("GRAC"), how they responded, what they knew about the Banzai Note, and whether they ever objected to it. The Trustee's own case theory is that the Banzai Note was a "sham" and an act of self-dealing; Defendants' defense is that Banzai stepped in to fund a legitimate program when others would not, with the knowledge of the Debtor's board and investors. The witnesses who were asked to fund GloriFi, and declined, are obvious sources of evidence on that dispute. And Mr. Jackson's affiliates are not strangers to this litigation: GloriFi Acquisitions, LLC, the Trustee's "Agent," acquired the Debtor's subsidiary interests through the Trustee's settlement with Jackson Investment Group, LLC, and the Trustee's special counsel in this adversary is also counsel for that Agent.

Nothing about Defendants' notices is unusual. Two days after Defendants served them, the Trustee noticed six non-party subpoenas of his own—four for depositions—on roughly three weeks' notice, with discovery closing November 18, 2026. Defendants have offered, and again offer, to move the depositions to dates, places, and formats (including remote testimony) convenient to the witnesses. The Motion should be denied.

## II. FACTUAL BACKGROUND

GRAC was established on January 13, 2022 as the credit card company underlying GloriFi. Toby, through Banzai Advisory Group, LLC, funded $5 million to GRAC to help launch the credit card program. Though the Trustee claims that "Neugebauer established GRAC as a sham" and that Banzai issued a "sham note," the Defendants acted in their reasonable business judgment and deny liability.

On July 22, 2026, the Court entered the Agreed Scheduling Order, which the parties negotiated and submitted. [Adv. Dkt. No. 40]. Among other deadlines, the Scheduling Order set November 18, 2026 as the deadline to complete all discovery. *Id.* at 2. Dispositive motions are due December 22, 2026, and trial docket call is set for April 6, 2027. *Id.* at 2–3.

Looking ahead to the November 18 discovery deadline, on October 5, 2026, Defendants served on the Trustee notices of their intent to serve document and deposition subpoenas on non-parties Rick Jackson and Vivek Ramaswamy (the "Notices"). [Mot. Exs. 1–2]. Consistent with Rule 45(a)(4), the Notices were served on all parties before service of the subpoenas on the witnesses. The Notices proposed depositions on October 20 (Jackson) and October 21 (Ramaswamy), each "at a mutually-agreeable place" in the witness's home metropolitan area "or by Zoom," and expressly provided that Defendants would coordinate so that each witness "may be deposed once for use in each proceeding." *Id.*

The document requests are confined to specific subjects and, for the most part, specific date ranges in 2022 and early 2023: (i) documents referring to Banzai, GRAC, or the Banzai Note; (ii) communications with other GloriFi investors or principals concerning the credit card program, Banzai, or GRAC; (iii) requests made to the witness between April 1 and August

2, 2022 to provide capital or financing to GloriFi or GRAC, and the witness's response; (iv) any financing proposal or term sheet offered for the credit card program; (v) GloriFi documents describing how the program would be financed; (vi) any objection the witness made to the Banzai Note or its lien; (vii) analyses of whether to provide additional capital; (viii) GloriFi notes or equity acquired during the period; (ix) the witness's interest in GloriFi Acquisitions, LLC or any recovery in this adversary; and (x) communications with the Trustee or GloriFi Acquisitions concerning Banzai, GRAC, or the Banzai Note. [Mot. Exs. 1–2, Ex. A-1].

On October 7, 2026—two days after Defendants' Notices—the Trustee served notices of his own non-party subpoenas to Charlie Hamilton (deposition and documents, October 28), Daniel Murphy (deposition and documents, October 29), Jin Kang (deposition and documents, October 30), Bryan Joiner (deposition, November 2), and Harrison Godwin and William Izlar (documents, October 28). Like Defendants, the Trustee is working to complete non-party discovery before November 18.

## III. ARGUMENT AND AUTHORITIES

### A. The Trustee bears a heavy burden under Rule 26(c) that he has not carried.

Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1), made applicable by FED. R. BANKR. P. 7026. Information "need not be admissible in evidence to be discoverable." *Id.* Non-party subpoenas under Rule 45 are subject to the same scope. FED. R. BANKR. P. 9016.

A court may enter a protective order only "for good cause" to protect "a party or

person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). As the Trustee concedes, the movant bears the burden to show good cause through "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998); Mot. ¶ 11. An order that forbids a deposition altogether is the most drastic relief available under Rule 26(c), and the movant's burden is correspondingly heavier. *Salter v. Upjohn Co.*, 593 F.2d 649, 650 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Campos v. Webb Cty. Tex.*, 288 F.R.D. 134, 137 (S.D. Tex. 2012) (collecting cases).

The Trustee's standing is also limited. He concedes he lacks standing under Rule 45 to quash subpoenas directed to non-parties, Mot. ¶ 10, and may proceed only under Rule 26(c) to protect *his own* interests. Yet the Motion identifies no burden on the Trustee beyond the ordinary task of attending depositions—which Defendants have offered to conduct remotely—and no burden on the witnesses supported by any declaration, affidavit, or objection from the witnesses themselves. The Trustee cannot assert a non-party's purported burden as a proxy for his own.

Stripped of its characterizations, the Motion rests on a single factual premise: that Defendants served the Notices in bad faith. But the Motion offers no evidence of improper purpose—only inference drawn from unrelated proceedings and from the witnesses' public profile. The prominence of a witness is not good cause. A witness's political candidacy does not place relevant knowledge beyond the reach of a civil subpoena; at most, it bears on scheduling, which Defendants have already offered to accommodate.

**B. Pending motions in other proceedings have nothing to do with Defendants' right to discovery here.**

The Motion devotes substantial attention to a motion to convert pending in the Animo Bancorp bankruptcy in the Western District of Texas, and to a motion to intervene in a separate adversary proceeding against Winston & Strawn. Mot. ¶¶ 2–3. Whatever the Trustee's views of those filings, they are pending before other tribunals or in other proceedings, they will be decided on their own merits, and they say nothing about whether two witnesses possess information relevant to the claims and defenses in *this* adversary.

Defendants did not choose to be sued. The Trustee filed this adversary proceeding, seeks nearly $4 million from Defendants, and agreed to a schedule that closes discovery on November 18, 2026. Having done so, he cannot condition Defendants' ability to develop their defense on the Trustee's approval of Defendants' litigation conduct elsewhere. The Federal Rules give every party the right to discovery relevant to its claims and defenses; Defendants are exercising that right on the schedule the Trustee agreed to.

**C. The Trustee's complaints about party discovery are irrelevant to whether a protective order should issue.**

The Motion also argues that Defendants should not be permitted to pursue non-party discovery while the Trustee's motion to compel is pending. Mot. ¶¶ 4, 13. That dispute is the subject of a separate motion [Adv. Dkt. No. 51], to which Defendants will respond separately and which the Court will resolve on its own record.

More fundamentally, Rule 26(c) asks whether the discovery at issue would subject a party or witness to annoyance, embarrassment, oppression, or undue burden. Nothing in the Rule makes one party's right to discovery contingent on the other side's satisfaction with its

own responses. If the Trustee believes Defendants' productions are deficient, the remedy is the motion to compel he has already filed—not an order forbidding Defendants from taking relevant non-party testimony. Discovery obligations run in both directions, and the Trustee himself served six non-party notices of his own while the parties' search-term negotiations were ongoing.

**D. The noticed dates were placeholders required to notice the depositions, not an act of harassment; Defendants remain willing to reschedule.**

A deposition notice must state a time and place. FED. R. CIV. P. 30(b)(1). Defendants selected dates within the discovery period, in the witnesses' home cities or by Zoom, and expressly invited a "mutually-agreeable place." The Notices also committed Defendants to coordinate so that each witness would sit only once across related proceedings—the opposite of harassment.

The Trustee complains that the depositions were noticed on roughly two weeks' notice. Mot. ¶ 5. But the Trustee's own non-party notices, served two days later, provided roughly three weeks' notice, and the November 18 deadline leaves every party with a compressed window. Defendants will move the depositions to mutually agreeable dates, times, places, and formats before the discovery deadline, including remote depositions of limited duration if that would further minimize any burden on the witnesses. To the extent any adjustment is warranted, the appropriate relief is a reasonable rescheduling. not a prohibition.

Nor does the Notices' caption error suggest improper purpose. Mot. ¶ 13. The subpoena forms attached to the Notices correctly identify this Court, the case, and the adversary proceeding, and Defendants will serve corrected subpoenas. Similarly, the Trustee's companion motion for expedited hearing states that the Notices were served "on September

6, 2026," [Adv. Dkt. No. 55 ¶ 1], when they were served on October 5. Clerical errors happen on both sides and are not evidence of bad faith.

### E. The witnesses' absence from Defendants' initial disclosures does not make them irrelevant.

The Trustee's only relevance argument is that Defendants did not list Mr. Jackson or Mr. Ramaswamy in their June 18, 2026 initial disclosures. Mot. ¶¶ 6, 13. That argument misreads Rule 26(a). Initial disclosures require a party to identify individuals likely to have discoverable information "*that the disclosing party may use* to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i) (emphasis added). They are not a catalog of every person with relevant knowledge, and they do not define or limit the scope of discovery under Rule 26(b)(1). A party is entitled to take discovery from witnesses whose testimony it has not yet decided to use. Indeed, that is a principal purpose of discovery.

Disclosures are also, by design, provisional. Rule 26(e) requires supplementation as a party learns additional information, and supplementation is unnecessary where the information "has otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). The Notices themselves did exactly that. Defendants' initial disclosures expressly reserved the right to supplement, and Defendants will supplement as appropriate.

The Trustee's reliance on *MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018), is misplaced. There, the court held that a party may not use third-party discovery to develop claims or defenses "not already identified in the pleadings." *Id.* at 609. Here, Defendants seek evidence on issues already joined: whether the Banzai Note was a legitimate financing or a "sham," whether the Debtor's board and stakeholders knew of and accepted it, and

Defendants' pleaded estoppel and *in pari delicto* defenses. The omission of a witness from initial disclosures was one consideration in *MetroPCS*, not a rule that unlisted persons are categorically off limits.

The subpoenas' relevance is apparent from their face:

- **Need for and source of financing.** The Trustee contends the Banzai Note was a sham and an act of self-dealing. Whether GloriFi asked outside investors—including Mr. Jackson and Mr. Ramaswamy—to fund the credit card program between April and August 2022, and whether they declined or offered alternative terms, goes to the heart of whether Banzai's loan was a necessary, arm's-length financing. (Request Nos. 3–5, 7.)
- **Knowledge and acquiescence.** Whether GloriFi's investors knew of the Banzai Note and its lien, and whether any of them objected before the bankruptcy, bears directly on Defendants' estoppel and *in pari delicto* defenses—defenses the Trustee's own interrogatories ask Defendants to support by identifying persons whose "knowledge, agreement, or acquiescence" Defendants rely upon. (Request Nos. 1–2, 6.)
- **Solvency and the Debtor's financial condition.** The Trustee's claims require proof of insolvency and the Debtor's and GRAC's financial condition in 2022, and the Trustee has served expert testimony on GRAC's solvency. Investor analyses of whether to provide additional capital to GloriFi, and the terms of notes or equity they acquired, are probative of the Debtor's value and condition during the relevant period. (Request Nos. 7–8.)

- **Interest, bias, and the real party in interest.** GloriFi Acquisitions, LLC acquired the Debtor's subsidiary interests through the Trustee's settlement with Mr. Jackson's company, and the Trustee's special counsel also represents that Agent. Who stands to benefit from any recovery in this adversary, and what the Agent's principals have communicated to the Trustee about Banzai, GRAC, and the Banzai Note, is plainly relevant to witness interest and bias. (Request Nos. 9–10.)

The requests are also proportional. They are limited to identified subjects and, with the exception of the interest-and-communications requests, to discrete windows in 2022 and early 2023. They allow production by email and production by Bates reference of documents already given to the Trustee. And the depositions may proceed remotely. The Trustee identifies no less burdensome source for this information: only the investors themselves know what they were asked, what they decided, and why.

### F. Sanctions are unwarranted.

The Trustee's request for monetary sanctions, Mot. ¶ 8, should be rejected. Defendants served facially relevant, narrowly drawn non-party discovery within the discovery period, offered remote and mutually agreeable arrangements, and have offered to reschedule. That conduct is "substantially justified" by any measure. *See* FED. R. CIV. P. 37(a)(5)(B) (made applicable by Rule 26(c)(3)).

## IV. CONCLUSION

For these reasons, Defendants respectfully request that the Court deny the Trustee's Motion for Protective Order Regarding Defendants' Notices of Non-Party Subpoenas in its

entirety; or, in the alternative, that the Court deny the request to quash and direct the parties to confer on mutually agreeable dates, locations, and formats for the depositions of Mr. Jackson and Mr. Ramaswamy, with leave to complete those depositions after November 18, 2026 if necessary to accommodate the witnesses' schedules; and grant Defendants such other and further relief to which they may be justly entitled.

Dated: October 15, 2026

Respectfully submitted,

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
Austen Irrobali
Texas Bar No. 24092564
airrobali@tillotsonlaw.com
Sara K. Babineaux
Texas Bar No. 24125102
sbabineaux@tillotsonlaw.com
TILLOTSON PATTON
1201 Main Street, Suite 1300
Dallas, Texas 75202
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on October 15, 2026, a true and correct copy of the foregoing was served in accordance with the applicable Rules on counsel for the Trustee via the Court's CM/ECF system.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson